IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| PRODUCE ALLIANCE, L.L.C., | |
| Plaintiff, | Case No.  1:CV 11-243-BLW |
| v. | **MEMORANDUM DECISION AND ORDER** |
| SHEPPARD PRODUCE, INC. D/B/A S&G PRODUCE COMPANY, et al., | |
| Defendants. | |

## INTRODUCTION

This case was filed for relief under the Perishable Agricultural Commodities Act, 7 U.S.C. § 499a *et seq*. ("PACA").  Many creditors have filed claims and there have been various objections filed to those claims.  The Court will examine each claim in light of the objections, and determine whether the claim can be resolved as a matter of law or must await a further hearing.

## LITIGATION BACKGROUND

Congress passed PACA "to prevent unfair business practices and promote financial responsibility in the fresh fruit and produce industry."  *See Boulder Fruit Exp. & Heger Organic Farm Sales v. Transp. Factoring, Inc*., 251 F.3d 1268, 1270 (9th Cir. 2001).  Prior to PACA, sellers of perishable commodities were unsecured creditors who

often collected nothing from defaulting buyers because secured lenders like banks were first in line.  PACA changed that by imposing a trust in favor of sellers of perishable commodities on the inventories of those commodities and their sale proceeds.  *See* 7 U.S.C. § 499e(c)(2).  The buyer holds the perishable commodities and their sales proceeds in trust for the seller and is not allowed to use those proceeds for any purpose until the seller is paid in full.  *See Sunkist Growers, Inc. v. Fisher*, 104 F.3d 280, 281 (9th Cir.1997).  Through this trust, the sellers of the commodities maintain a right to recover against defaulting buyers superior to all creditors, including secured creditors.  *Boulder Fruit*, 251 F.3d at 1270-71.

Congress specifically granted to federal courts jurisdiction over "actions by [PACA] trust beneficiaries to enforce payment from the trust."  *See* 7 U.S.C. § 499e(c)(5)(i).  Produce Alliance has brought such an action to enforce payment from a PACA trust imposed on defendant S&G, a purchaser of fresh produce from Produce Alliance.  Produce Alliance alleged that it had not been paid by S&G for PACA produce, and that S&G was in the process of going out of business.

On May 26, 2011, this Court entered a Temporary Restraining Order prohibiting the dissipation of any assets of S&G.  On June 15, 2011, this Court entered a Claims Order that established an escrow account – known as a PACA trust – to be funded by the liquidation of S&G's assets. The Claims Order also set up a claims procedure so that PACA creditors could file claims on the PACA trust.  *See Claims Order (Dkt. No. 25).*

**Memorandum Decision & Order - 2**

The Claims Order required any party with a PACA claim, seeking payment from the PACA trust, to file a complaint in intervention and a PACA proof of claim along with all supporting documents by certain deadlines.  Any objection to these claims had to be filed by a certain deadline, and had to contain "**in detail** the legal and factual basis for the objection."  *See Claims Order (Dkt. No. 25)* at ¶ 18 (emphasis in original).

As of January of 2012, the PACA trust contained $577,015.61, while the claims against the trust totaled $1,660,081.12.  The parties agreed that an interim distribution could be made to claimants whose PACA rights were undisputed.  Accordingly, the Court distributed $405,370.43 from the PACA trust to those PACA claimants.  *See Order of First Interim Distribution (Dkt. No. 170)*.  In an attempt to increase the trust funds, plaintiffs filed motions seeking to add claims that D.L Evans Bank and Sheppard Transportation improperly received assets from the PACA trust and must return those assets to the trust.  The Court granted those motions to amend.  *See Memorandum Decision (Dkt. No. 169)*.

Before the Court now are numerous claims and objections thereto.  The Claims Order generally provides for a hearing to resolve those claims that are the subject of an objection, timely filed.  *See Order (Dkt. No. 25)* at ¶ 21.  Some claims, however, can be resolved entirely as a matter of law, and a hearing is unnecessary.  The Court will consider each remaining claim that has been challenged by an objection, and determine whether it can be resolved as a matter of law or must await a hearing.

**Memorandum Decision & Order - 3**

The Court's inquiry here is limited.  The Court is not determining generally whether these claims are valid and payable.  The Court is only determining whether a claim is a valid PACA claim – that is, whether the claim seeks payment for the delivery of perishable agricultural commodities protected by PACA.  Only PACA claims can be paid from the PACA trust.  *Boulder Fruit*, 251 F.3d at 1270-71.  By denying a claim, the Court is holding that it cannot be paid from the PACA trust; the Court is not holding that the claim is invalid in any broader sense.

## Spokane Produce Claim

Spokane Produce filed a complaint in intervention seeking $69,534.48 from the PACA trust.  *See Complaint in Intervention (Dkt. No. 76).*  Plaintiff Produce Alliance objected to the claim on the ground that Spokane Produce's invoices failed to name S&G as required by PACA.

Spokane Produce's Vice-President and Treasurer, Ramona Higashi, filed her Declaration explaining the arrangement between Spokane Produce and S&G.  *See Higashi Declaration (Dkt. No. 131).*  She alleges that Spokane Produce delivered fresh produce to schools at S&G's direction pursuant to a contract S&G had with the federal government to organize these deliveries.  *Id*. at p. 2.  At the time of delivery, Spokane Produce would give the school a copy of its invoice, and then e-mail a copy of the same invoice to S&G.  *Id*. at pp. 2-3.  Until it stopped payments, S&G paid Spokane Produce on the e-mailed invoices.  *Id.* at p.3.

Memorandum Decision & Order - 4

Produce Alliance does not dispute this description of the business arrangement, but argues that Spokane Produce's invoices were not addressed to S&G – as required by the PACA statute – but rather to various schools and other entities. Because the name of S&G is completely absent from the invoices, Produce Alliance argues, Spokane Produce failed to follow the statutory prerequisites for preserving its PACA rights.

Under PACA, Spokane Produce was required to provide notice to S&G that it was preserving its PACA rights in one of two forms: (1) a written notice within thirty calendar days after payment was due, *see* 7 U.S.C. § 499e(c)(3) ("the written notice method"), or (2) a printed statement on its regular invoices. *See* 7 U.S.C. § 499e(c)(4) ("the invoice method").

Spokane Produce relied on the second method, the invoice method. Proper notice under the invoice method consists of three independent requirements set forth in 7 U.S.C. § 499e(c)(4). First, the bill or invoice statements must be "ordinary and usual," meaning "communications customarily used between parties to a transaction in perishable agricultural commodities in whatever form, documentary or electronic, for billing or invoicing purposes." 7 C.F.R. § 46.46(5). Second, the payment period must appear on the bill or invoice if it differs from the default payment period established by the regulations. *See* 7 U.S.C.A. § 499e(c)(4). Third, sellers (like Spokane Produce) must print on the bill or invoice a statement of intent to preserve the trust, the precise language of which is provided in the statute. *See* 7 U.S.C. § 499e(c)(4).

**Memorandum Decision & Order - 5**

Produce Alliance does not take issue with the second and third requirements, but argues that the first requirement was not met because it is not "ordinary and usual" for the invoice to leave off the name of the buyer – in this case S&G.  Produce Alliance cites cases holding that PACA requires the buyer's name to be on the invoice in order for the seller to preserve his PACA rights against that buyer.  For example, in *A&J Produce Corp. v. Chang*, 385 F.Supp. 2d 354 (S.D.N.Y. 2005), the seller's invoices left off the name of the buyer against whom the seller was seeking to impose a PACA trust.  In addition, there was no evidence that the seller provided the invoices to the buyer.  Under those circumstances, the court held that "[w]ithout the name of the buyer, the invoices fail to fulfill the invoice method's intent; i.e. notice.  Accordingly, [seller] failed to provide notice to the [buyer] pursuant to the invoice method and, therefore, [seller] failed to preserve their [PACA] trust rights.  *Id.* at 361; *see also In re Marvin Properties, Inc*, 854 F.2d 1183, 1186 (9th Cir. 1988) (holding that "[t]he statute clearly requires the seller to give written notice directly to the buyer").

Here, unlike *A&J Produce*, there is evidence not only that the buyer received the invoices but that it paid them as well.  There is also evidence that the invoices contained the statutorily required language preserving PACA rights, at least creating an issue of fact as to whether S&G was on notice that Spokane Produce was asserting its PACA rights.

While the PACA regulations do provide that one way of preserving PACA benefits is to name the buyer in the invoice, *see* 7 C.F.R. § 46.46(f)(1 ), the regulations also

**Memorandum Decision & Order - 6**

provide for an "alternate method" that does not require naming the seller.  *Id*. at § 46.46 (f)(3).  Under this alternate method, it is enough if the seller's invoice contains the statutorily-required PACA language (citing the statute and retaining a trust over the produce) and was "given to the buyer."  *Id*.  There is evidence that was done here.

There may be questions about precisely which e-mails were actually received by S&G from Spokane Produce.  At this stage of the proceedings, the Court is not making detailed findings about amounts due and owing.  Produce Alliance has objected broadly to the entirety of Spokane Produce's claims on the ground that its invoices failed to include S&G's name.  Spokane Produce has submitted enough evidence here to warrant denying that objection.

**Dubacano Claim**

Dubacano originally filed a claim for $11,159.05.  Sheppard Produce objected, *see Objection (Dkt. No. 122),* claiming that only $9,457.05 was owed.  Dubacano responded, *see Response (Dkt. No. 129)*, agreeing to that sum to avoid the time and expense of a dispute.  Accordingly, the Court will sustain Sheppard Produce's objection and allow Dubacano's claim to the extent of $9,457.05.

**Herbthyme Farms Inc. & Murakami Produce Co. Claims**

Herbthyme Farms filed a claim for $2,098.94 and Murakami Produce filed a claim for $6,717.50.  Neither filed a complaint in intervention.  The Court's Claims Order required that any creditor seeking payment from the PACA trust must file a complaint in

intervention and a PACA proof of claim by the deadlines set forth.  Failure to follow this requirement would mean that the claim "shall be forever barred."  *See Claims Order (Dkt. No. 25)* at ¶ 17.  Because Herbthyme and Murakami failed to file complaints in intervention, their claims must be denied.

**Frazier Melon and M & M Heath Farms, Inc. Claims**

Frazier Melon filed a claim for $15,140.75, and M & M Heath Farms filed a claim for $990.  *See Claims (Dkt. Nos. 75 & 99).*  Produce Alliance filed an objection to both claims, alleging that neither entity's invoices contain the statutorily required language preserving PACA rights.  Neither Frazier Melon nor M&M Heath Farms filed any response.  As set forth above, PACA requires that sellers use one of two methods to put buyers on notice that the seller is asserting PACA rights.  There is no evidence that Frazier Melon and M&M Heath Farms followed either method.  Accordingly, Produce Alliance's objection will be granted and these claims denied.

**Stanley Sheppard Claim**

Stanley Sheppard, President of defendant S&G, filed a claim that he and his wife are owed $125,880.87 for "loans to [S&G] from the proceeds of life insurance policies, credit cards, and personal checks."  *See Claim (Dkt. No. 32)* at p. 3.  Produce Alliance objects, claiming that Stanley Sheppard failed to file a complaint in intervention that explains why his loan should be paid from PACA trust proceeds, and that his loan is not a perishable commodity protected by PACA.

**Memorandum Decision & Order - 8**

As discussed above, PACA gives priority to sellers of perishable agricultural commodities above even secured creditors. Stanley Sheppard fails to explain why his loan to S&G should be given better treatment than, say, a bank loan, which is paid only after all the PACA claimants had been paid. *See* 7 U.S.C. § 499e(c)(2) (stating that PACA proceeds are held in trust "until full payment" has been made to sellers of fresh produce). Indeed, a corporate officer who uses PACA funds to repay himself for loans he made to the corporation can be held personally liable for dissipating PACA funds. *Sunkist Growers, Inc. v. Fisher*, 104 F.3d 280 (9th Cir.1997); *see also Mid-Valley Produce Corp. v. 4-XXX Produce Corp.*, 819 F.Supp. 209 (E.D.N.Y. 1993) (holding bank president personally liable for using PACA funds to repay loan he made to company); *Produce Alliance, L.L.C. v. Green Apple Produce, Inc.,* 2005 WL 1153616 (D.Idaho 2005) (holding corporate officials personally liable for using PACA proceeds to pay legitimate corporate expenses of buyer like rent and payroll).

These authorities establish the impropriety of using PACA proceeds to repay loans made to the buyer by those associated with the buyer. Thus, the claim of Stanley Sheppard that he should be repaid from PACA proceeds for a loan he made to S&G has no support in the law. Because this is purely a matter of law, a hearing is unnecessary. Accordingly, Stanley Sheppard's claim that his loan be paid out of PACA proceeds must be denied.

**Sheppard Transportation Claim**

Sheppard Transportation filed a claim for $154,400.  *See Claim (Dkt. No. 34)*. Produce Alliance objected on the ground that the claim is not for perishable agricultural commodities.

Attached to the claim were various invoices for transportation services provided by Sheppard Transportation to S&G.  Sheppard Transportation argues that by providing transportation services, it enlarged the PACA trust and therefore deserves payment from that trust.

The identical argument was made in *R Best Produce, Inc. v. Shulman-Rabin Marketing Corp.,* 467 F.3d 238, 242 (2nd Cir. 2006).  There, Union Pacific sought payment from a PACA trust for the transportation services it rendered, arguing that "without such services, there would be substantially less trust assets for distribution." *Id.* (internal quotations omitted).  The Second Circuit rejected that argument, holding that PACA was intended to benefit sellers of fresh produce and that "allowing Union Pacific to recover its shipping costs from the assets of the trust before the sellers are paid in full would contradict the purpose and language of PACA . . . ."  *Id.*

The Court agrees, and finds that Sheppard Transportation's claim has no support in the law.  Once again, because this issue is purely one of law, no hearing is necessary. Accordingly, the Court finds that Sheppard Transportation's claim for payment of transportation services of $154,400 will be denied.

**Skinner Trucking Claim**

**Memorandum Decision & Order - 10**

Skinner Trucking filed a claim for $3726 based on transportation services provided to S&G.  *See Claim (Dkt. No. 33)*.  For the same reasons as set forth above, with regard to Sheppard Transportation's claim, this claim will be denied.

**Ameripride, Diamond Towing, McIver Mobile Service & Prescott Inc Claims**

Ameripride filed a claim for $1,005.75 for cleaning services; McIver Mobile Service filed a claim for $758.86 for mechanical work on S&G's vehicles; Prescott Inc. filed a claim for $220 for mechanical work on those vehicles; and Diamond Towing filed a claim for $405 for towing services.  *See Claims (Dkt. Nos. 28, 37, 63 & 97)*.  None of these claimants provided perishable agricultural commodities, and hence, as a matter of law, they are not PACA beneficiaries.  Accordingly, the Court will deny their claims.

**National Food Corporation Claim**

National Food Corporation filed a claim for $2354.40 for the delivery of eggs.  *See Claim (Dkt. No. 38)*.  Produce Alliance objected to the claim, arguing that it was not a claim for perishable agricultural commodities under PACA.

PACA protects sellers of perishable agricultural commodities, which "[m]eans any of the following, whether or not frozen or packed in ice: Fresh fruits and fresh vegetables of every kind and character; and ... [i]ncludes cherries in brine as defined by the Secretary in accordance with trade usages."  7 U.S.C. § 499a(b)(4).  Eggs are not included in the common definitions of "fresh fruits and fresh vegetables," and National Food offers no authority that PACA should be interpreted otherwise.  Accordingly, National Food

**Memorandum Decision & Order - 11**

Corporation's claim must be denied.

## Jones Light Loads Claim

Jones Light Loads filed a claim for $1102.40, but it contains no invoices or explanation as to what the claim is for.  *See Claim (Dkt. No. 29)*.  Accordingly, for the reasons discussed above, the claim will be denied.

## Solid Rock Custom Stone Engraving Claim

Solid Rock sent a copy of its claim to counsel for Produce Alliance but did not file the claim in this case.  As there is no claim filed, the Court has nothing to rule on.

## Van Engelen CPA's & Co. Claim

Van Engelen filed a claim for $25,358.03 for CPA services.  *See Claim (Dkt. No. 40)*.  Because this claim is not for perishable agricultural commodities, the claim must be denied.

## Rocky Fence Vineyard, Inc. Claim

Rocky Fence Vineyard filed a claim for $800.  *See Claim (Dkt. No. 57)*.  Produce Alliance filed an objection, arguing that Rocky Fence failed to file a complaint in intervention and offered no evidence that it had given the statutorily required notice to S&G to preserve its PACA rights.  These arguments are persuasive for the reasons stated above.  Rocky Fence failed to file the required complaint in intervention, and there is no evidence that Rocky Fence used either of the two methods required by PACA to put S&G on notice that Rocky Fence was asserting its PACA rights.  Hence this claim must be

denied.

**S&G Claim**

      S&G filed a claim for "approximately" $20,000.  *See Claim (Dkt. No. 35)*.  S&G

explains its claim with a handwritten note stating as follows:

> We had Produce Alliance LLC hold $1.40 per package on all purchases,
> purchased through them.  I do not know how much they owed [S&G].  I
> would think around $20,000 – they never let us know.

This was signed by Stan Sheppard, the President of S&G.  Below his signature is a further

note that appears to be in his handwriting:

> Produce Alliance would hold the $1.40 per pkg. and then credit it back to
> [S&G].  I do not know how much they still are holding.

This handwritten note appears to allege that when Produce Alliance purchased some

unspecified products from S&G, Produce Alliance held back $1.40 "per package."  In

essence, S&G is arguing for an offset.  S&G seeks to reduce what it owes to Produce

Alliance by the amount that Produce Alliance owes to S&G.

      The Claims Order states that "Any party in interest, including the defendants

[S&G], shall be permitted to assert any and all rights . . . including claims of offset in this

claims procedure."  *See Claims Order (Dkt. No. 25)* at ¶ 16.  Thus, S&G had the right to

raise a claim of offset.

      The claim itself, however, is insufficient.  S&G, represented by counsel, raises its

claim of offset by a handwritten scrawl on a piece of note paper.  There is no detail

whatsoever, and no documents attached to explain the claim.  Indeed, S&G's counsel was

**Memorandum Decision & Order - 13**

well-aware of the Claims Order that required claims to be in a form that "complies with Rules 8 and 24 of the Federal Rules of Civil Procedure." *Id*. at ¶ 13.  This claim for offset fails to comply with that requirement and must be denied.

**Wholesome Family Farms Claim**

Wholesome Family Farms filed a letter with the Court on October 11, 2011, making a claim for $5,006.20 for produce delivered to S&G.  *See Letter (Dkt. No. 149)*. The letter is untimely and must be denied.  The Court's Claims Order stated that all PACA claims must be filed with the Court on or before July 29, 2011 or be "forever barred."  *See Claims Order (Dkt. No. 25)* at ¶ 17.  Wholesome's letter was not filed until October 11, 2011, more than two months after the deadline.  This claim will therefore be denied.

**Wage Claims**

Seven former employees of S&G have filed claims for unpaid wages.  In June of 2011, the Claims Order authorized partial payment of those claims, and checks were distributed to the employees.  But those checks did not pay the claims in full, covering only 10% to 20% of each claim.  In February of 2012, when the first interim distribution was made, it did not include payment of any of the wage claims because the Court held that the PACA claims took first priority in that first distribution.  *See Order (Dkt. No. 169)*.  The Court also held that the wage claims could be paid from the PACA trust so long as it was clear that all PACA claims could be paid.  *Id.*  Because it is not yet clear

**Memorandum Decision & Order - 14**

whether all PACA claims can be paid from the PACA trust, the wage claims remain to be resolved and cannot be denied or granted at this point.

**ORDER**

In accordance with the Memorandum Decision set forth above,

NOW THEREFORE IT IS HEREBY ORDERED, that the following claims are denied: (1) Frazier Melon, *Claim (Dkt. No. 75)*; (2) M&M Heath Farms Inc., *Claim (Dkt. No. 99)*; (3) Stanley Sheppard, *Claim (Dkt. No. 32)*; (4) Sheppard Transportation, *Claim (Dkt. No. 34)*; (5) Skinner Trucking, *Claim (Dkt. No. 33)*; (6) Ameripride, *Claim (Dkt. No. 63)*; (7) Diamond Towing, *Claim (Dkt. No. 28)*; (8) McIver Mobile Service, *Claim (Dkt. No. 37)*; (9) Prescott Inc., *Claim (Dkt. No. 97)*; (10) National Food Corporation, *Claim (Dkt. No. 38)*; (11) Jones Light Load, *Claim (Dkt. No. 29)*; (12) Van Engelen CPA's & Co., *Claim (Dkt. No. 40)*; (13) Rocky Fence Vineyard, *Claim (Dkt. No. 57)*; (14) S&G, *Claim (Dkt. No. 35)*; (15) Herbthyme Farms, *Claim (Dkt. No. 120)*; (16) Murakami Produce Co., *Claim (Dkt. No. 58)* and (17) Wholesome Family Farms, Inc., *Claim (Dkt. No. 149)*.

IT IS FURTHER ORDERED, that the following claims remain for resolution: (1) Spokane Produce, *Claim (Dkt. No. 76)*; (2) Dubacano, *Claim (Dkt. No. 92) (to the extent it seeks $9,457.05, pursuant to agreement)*; and (3) Wage Claims, *Claims (Dkt. Nos. 71, 72, 73, 74, 87, 98, 100)*

**Memorandum Decision & Order - 15**



DATED:  **June 11, 2012**

Honorable B. Lynn Winmill
Chief U. S. District Judge